UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMESHLO A. GREEN,<br><br>    Petitioner,<br><br>    v.<br><br>DANIEL E. CUEVA,<br><br>    Respondent. | No. 2:21-cv-02414 KJM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. <u>Introduction</u>

  Petitioner Dameshlo Green, a state prisoner proceeding with counsel, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2018 conviction for first degree murder with a firearm enhancement and felony possession of a firearm. Petitioner was sentenced to 75 years to life in state prison. Petitioner claims that he is entitled to habeas relief on the following grounds: (1) ineffective assistance of counsel; (2) the trial court erred in excluding evidence to present a complete defense; and (3) cumulative errors deprived him of due process. After careful review of the record, this Court concludes that the petition should be denied.

////

////

////

1

## II. Procedural History

Petitioner's first trial resulted in a mistrial. (ECF No. 9-1 at 28.)[1] After his second trial, the jury found petitioner guilty of first degree murder of Tamisha Ridge, with a firearm enhancement, and felon in possession of a firearm. (ECF No. 9-3 at 65-67.) On June 15, 2018, the trial court sentenced petitioner to 81 years to life in state prison, including an imposed but stayed term of six years. (Id. at 97-98.)

The California Court of Appeal affirmed petitioner's conviction, and the California Supreme Court denied review. (ECF Nos. 9-13 & 9-15.)

Petitioner filed the instant petition on December 27, 2021. (ECF No. 1.) Respondent filed an answer. (ECF Nos. 8 & 9.) Petitioner filed a traverse. (ECF No. 10.)

## III. Facts[2]

After independently reviewing the record, this Court finds the appellate court's summary accurate and adopts it herein. In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant and the victim, Tamisha Ridge, had a long term, on-again, off-again relationship. Defendant had prior convictions for abusing Ridge in fits of jealous rage. At the time of the murder, the relationship between Ridge and defendant had ended, but defendant wanted to rekindle it. Ridge lived in Sacramento, and defendant had been staying with his sister and working with his father in Texas. Ridge was dating L.W.
>
> On May 12, 2014, defendant flew from Texas to Sacramento. When he arrived, he called Ridge and they argued, but he did not tell her he was in Sacramento. On May 12 and 13, defendant sent text messages to Ridge accusing her of betraying him but also seeking to reconcile. He made numerous additional phone calls to Ridge, but Ridge did not answer most of them even though he begged her in text messages to answer his calls.
>
> In the early morning hours of May 14, Ridge and L.W. went to bed together in Ridge's bedroom, while others were in the home.

---

[1] All page numbers refer to ECF pagination.

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Green, No. C087436, 2020 WL 4496855 (Cal. Ct. App. Aug. 5, 2020), a copy of which respondent lodged as ECF No. 9-13.

> Defendant entered Ridge's home through the back door at around 4 a.m. and went to Ridge's bedroom. A shotgun discharged and defendant fled. L.W. woke a woman who had been sleeping in the living room and, referring to defendant, told her "Twon shot [Ridge]." L.W. wrapped a piece of clothing around the shotgun and slid it out of the bedroom, after which he drove to the home of Ridge's brother and said, "He shot her, he shot her, we gotta go. He shot [Ridge]."
>
> Later that morning, defendant turned himself in at a sheriff's station.
>
> Ridge died from a shotgun wound to her face. The shotgun was found in two pieces. A wooden piece was on the bed, and the rest was in the living room. No fingerprints were found on the shotgun.
>
> Defendant testified during the first trial, and his testimony was read into evidence in the second trial. He said he went to Ridge's house at 4 a.m. on May 14, 2014, to reconcile with Ridge, not knowing that L.W. was there. He entered through the back door and went into Ridge's bedroom, where he found L.W. and Ridge. L.W. rushed defendant and they struggled. According to defendant, L.W. reached under the bed and pulled out a shotgun. As the two fought over the shotgun, L.W. hit defendant in the face with the stock. When L.W. hit defendant with the shotgun, it discharged toward Ridge. Defendant fled.
>
> The first jury was unable to reach a verdict, and the trial court declared a mistrial. A second jury convicted defendant of first degree murder by personally discharging a firearm causing Ridge's death (Pen. Code, §§ 187, subd. (a), 12022.53, subds. (b), (c), & (d) -- count 1)[1] and being a felon in possession of a firearm (§ 29800, subd. (a)(1) -- count 2). The trial court found true a prior serious felony conviction allegation under the three strikes law.
>
> [N.1 Undesignated statutory references are to the Penal Code.]
>
> The trial court sentenced defendant to a total indeterminate term of 75 years to life for the first degree murder. It also imposed but stayed a term of six years for being a felon in possession of a firearm.

(ECF No. 9-13 at 2-3.)

IV. <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>,

502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

4

1  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).
2  Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant
3  the writ if the state court identifies the correct governing legal principle from [the Supreme
4  Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[3]
5  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.
6  Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue
7  the writ simply because that court concludes in its independent judgment that the relevant state-
8  court decision applied clearly established federal law erroneously or incorrectly. Rather, that
9  application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan,
10 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,
11 in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state
12 court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes
13 federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state
14 court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.
15 Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus
16 from a federal court, a state prisoner must show that the state court's ruling on the claim being
17 presented in federal court was so lacking in justification that there was an error well understood
18 and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at
19 103.
20     If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing
21 court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,
22 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)
23 (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of
24 § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by
25 considering de novo the constitutional issues raised.").

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Petitioner's Claims

    A. Claim One: Ineffective Assistance of Counsel

Petitioner claims that he was deprived of effective assistance of counsel when his trial counsel failed to identify and articulate the correct legal basis to admit into evidence Williams's (also referred to as "L.W.") statement that the shooting was an accident. (ECF No. 1 at 18-21.) Williams made this statement to a defense investigator in a jailhouse interview. (Id. at 19.) Although the trial court correctly ruled that the statement was inadmissible under California Evidence Code § 1230, he argues that it was admissible to impeach Williams under California Evidence Code § 1202 and his counsel was ineffective for failing to argue this legal basis. (Id. at 19.) In response, respondent argues that the state court reasonably rejected the ineffective assistance of counsel claim. (ECF No. 8 at 12-17.)

In the last well-reasoned decision, the state appellate court rejected petitioner's claim on direct appeal.

I

> Defendant contends his trial counsel was ineffective in not attempting to introduce the statements of L.W. that there was a struggle over the shotgun and that the shooting was an accident. He claims the statements should have been introduced under Evidence Code section 1202, which makes hearsay statements admissible if they are admitted to impeach other statements of the same hearsay declarant.

A

> The prosecution successfully introduced evidence of L.W.'s hearsay

7

statements made soon after the shooting implicating defendant as the one who shot Ridge. The woman who had been sleeping in the living room testified that L.W. woke her in a panic and said, "Twon shot [Ridge]," and L.W. drove to the home of Ridge's brother and said, "He shot her, he shot her, we gotta go. He shot [Ridge]." The hearsay statements were admitted as excited utterances under Evidence Code section 1240.

While defendant's trial counsel attempted to have L.W.'s later statements to an investigator about a struggle or an accident introduced as a declaration against interest under Evidence Code section 1230, the trial court denied defendant's request to introduce this evidence because the statements were not against L.W.'s interest. Defendant now asserts the statements were admissible as prior inconsistent statements under Evidence Code section 1202 and defense counsel provided ineffective assistance by not attempting to introduce them under that provision of the Evidence Code.

L.W. did not testify at trial because he invoked his right not to incriminate himself. L.W.'s counsel advised the trial court that L.W. would refuse to answer questions concerning his affiliation with a criminal street gang. The trial court determined that L.W.'s affiliation with a criminal street gang was relevant to his credibility, but because he would not testify concerning those matters, the parties would not have a chance to impeach him, and therefore L.W. was unavailable as a witness in this case.

In the discussion of whether L.W. would testify, the trial court said: "I do believe [L.W.'s] gang involvement back then and now are relevant issues. It does go to his motive, does go to his attitude towards testifying, to his credibility. [L.W.] has given several conflicting statements, first stating that [defendant] shot [Ridge], then later stating that there was a scuffle. The gang affiliation, as I said, is relevant."

At trial, counsel for defendant asserted that some of L.W.'s statements to an investigator about a struggle between L.W. and defendant and about the shooting being an accident should be admissible under Evidence Code section 1230. Under that statute, hearsay is admissible if it is a declaration against the declarant's interest. (Evid. Code, § 1230.) Counsel did not make an offer of proof regarding what L.W. said, but it appears the trial court and parties may have discussed L.W.'s statements either off the record or in another proceeding to which defendant does not provide a citation. The trial court noted that, up until that point, the defense had argued L.W. could not invoke his right not to incriminate himself because his prior statements were not incriminating. Defense counsel countered, however, that the statements were against L.W.'s interest because L.W. "left the scene of the crime. He moved the shotgun. [¶] ... [¶] And he had a struggle with [defendant] which would tend to incriminate him." Defense counsel added: "The whole thing shows it was an accidental shooting." The trial court noted that an accidental shooting in this case would not be against L.W.'s penal interest, and the trial court said it would need a lot more information to find L.W.'s hearsay statements admissible under Evidence Code section

8

1230.

Still opining on the application of Evidence Code section 1230, the trial court explained: "I don't see this applying because my understanding is that the statement was given to Mr. Fletcher [apparently defense counsel in the first trial] while [L.W.] was in custody, coincidentally housed on the same floor as [defendant]; that the statement came shortly before the first trial; and that also prior statements were made that were inconsistent to the statements about the accident and the struggle, and that statement was that he gave to Mr. Fletcher or an investigator was that the gun accidentally went off." Defense counsel agreed that was the gist of what L.W. told the investigator.

The trial court said: "So if those facts are true that he said I was sleeping there, [defendant] or someone came in, we struggled over a gun and it went off, not sure if it would qualify as being so far contrary to the declarant's pecuniary or proprietary interest or so far subject him to the risk of civil/criminal liability."

The following exchange then took place among counsel and the trial court:

"[Defense counsel]: I think in one of the statements he said the gun was already there under the bed.

"THE COURT: Yeah.

"[Prosecutor]: "Well, I don't remember that but even so, still --

"THE COURT: Right, even so.

"[Defense counsel]: The charge is he brought a gun into the house, and he shot and killed this woman.

"[Prosecutor]: I never said --

"THE COURT: I'm just looking at whether it falls under 1230. So let's assume he said, [L.W.] said I had a gun there. I don't know what the statement is.

"[Prosecutor]: He's never said that. He's never said he had a gun there. At most he may have said a gun was there, but he never said he brought a gun.

"[Defense counsel]: He basically said there was a gun under the bed, and they struggled over it.

"[Prosecutor]: So, again --

"[Defense counsel]: Whether he brought it there or Ridge had it there, he still knew it.

"[Prosecutor]: Again --

1  "[Defense counsel]: Then he moved the gun.

2  "THE COURT: I'm sorry?

3  "[Defense counsel]: Then he moved the gun and left the scene.

4  "THE COURT: Okay.

5  "[Prosecutor]: That's not a crime, Danny.

6  "THE COURT: So I'm not sure how any of those statements would subject him to -- those are so against one's penal interest that they give indicia of reliability. So based on what I've heard so far, I would deny your request to admit that under 1230.

"[Defense counsel]: I'll do some more research, too."

### B

"To succeed in a claim of ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that, but for counsel's error, the outcome of the proceeding, to a reasonable probability, would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218, 233.) If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, the claim on appeal must be rejected unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264.)" (*People v. Lawley* (2002) 27 Cal.4th 102, 133, fn. 9 (*Lawley*).)

Defendant now asserts L.W.'s excluded statements were admissible under Evidence Code section 1202 and defense counsel provided ineffective assistance by not attempting to introduce them under that provision. That statute provides: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct." (Evid. Code, § 1202.)

Defendant's claim of ineffective assistance is unsupported because, with regard to the excluded statements, the appellate record does not provide sufficient evidence of exactly what L.W. said to the person who heard the statements and the circumstances of the statements. No offer of proof was made concerning the actual statements; we can derive from the record only hints of the circumstances and actual statements. It appears the statements were made while L.W. was incarcerated near defendant and that there were contradictions in what L.W. told the investigator.

L.W.'s statements that there was a struggle between him and

10

> defendant and that the shooting was accidental were not expressly inconsistent with the statements made soon after the shooting that defendant shot Ridge. Certainly, the later statements may have explained L.W.'s earlier excited utterances, but they were not inconsistent because defendant may have shot Ridge even if there was a struggle between defendant and L.W. and the shooting was accidental. However, we recognize that a statement may be found inconsistent under the Evidence Code if it had " 'a tendency to contradict or disprove the [witness's trial] testimony or *any inference to be deduced from it*.' " (*People v. Spencer* (1969) 71 Cal.2d 933, 942, italics added.) Nevertheless, without the context of L.W.'s statements and the actual statements he made, as well as other statements L.W. apparently made about the incident, it is impossible for us to conclude with any level of certainty that the outcome of the proceeding, to a reasonable probability, would have been different. (*Lawley, supra,* 27 Cal.4th at p. 133, fn. 9.) Therefore, because the record does not establish the prejudice prong of the test for defendant's contention of ineffective assistance of counsel, the contention is without merit.

(ECF No. 9-13 at 3-8.)

To state an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). For the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When applying Strickland, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473. When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

Richter, 562 U.S. at 105.  To the extent petitioner tries to present new evidence to support his ineffective assistance of counsel claim, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Here, petitioner claims that his trial counsel was ineffective for failing to argue that Williams's statement regarding the accidental shooting during the scuffle was admissible under California Evidence Code § 1202.  After reviewing the record, this Court concludes that the state court's rejection of the claim based on the prejudice prong was not objectively unreasonable.  The state court determined that "without the context of L.W.'s statements and the actual statements he made, as well as other statements L.W. apparently made about the incident, it is impossible for us to conclude with any level of certainty that the outcome of the proceeding, to a reasonable probability, would have been different." (ECF No. 9-13 at 8.)  A fairminded jurist could agree with the state court's conclusion.  As the state court noted, the underlying record does not contain Williams's statements or an offer of proof as to what he would have said. (ECF No. 9-7 at 142-47.)  Federal courts have rejected similar ineffective assistance of counsel claims when petitioners fail to specify information from potential witnesses.  See Davis v. Woodford, 384 F.3d 628, 650 (9th Cir. 2004); Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000); see also Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (speculation as to information a witness could have provided is insufficient to demonstrate ineffective assistance of counsel for failure to investigate); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988).  At best, the record suggests that Williams would have said that the gun discharged accidentally during the scuffle with petitioner. (ECF No. 9-7 at 142-46.)  Without more information, even assuming trial counsel was deficient, this Court cannot disrupt the state court's reasonable conclusion that petitioner has not shown prejudice from counsel's alleged errors.  Williams's statement was not the only evidence that the shooting was accidental; petitioner also testified during the first trial, which was read into evidence during the prosecutor's case-in-chief in the second trial, that the shotgun went off while petitioner and Williams were tussling. (ECF No. 9-5 at 108-09.)  This Court determines that the state court's decision was not contrary to, or an unreasonable application of, clearly established

federal law, or that such a finding was based on an unreasonable application of the facts and recommends denying habeas relief on petitioner's ineffective assistance of counsel claim.

B. Claim Two: Exclusion of Admissible Evidence

Next, petitioner claims that the trial court's exclusion of Williams's statement that the shotgun was under the victim's bed violated his right to present a complete defense. (ECF No. 1 at 21-24; ECF No. 10 at 5-6.) In response, respondent contends that fairminded jurists could agree with the state court's decision rejecting this claim. (ECF No. 8 at 17-20.)

In the last well-reasoned decision, the state appellate court considered this claim and denied it.

> Referring to the same discussion between court and counsel, defendant claims the trial court erred in finding that L.W.'s statement that the shotgun was under the bed was not a statement against penal interest. (Evid. Code, § 1230.)
>
> "We review a trial court's decision whether a statement is admissible under Evidence Code section 1230 for abuse of discretion. [Citations.]" (*People v. Grimes* (2016) 1 Cal.5th 698, 711.) " 'The proponent of such evidence must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." ' [Citation.] 'The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration.' " (*People v. Geier* (2007) 41 Cal.4th 555, 584.)
>
> Without knowing exactly what L.W. said concerning the shotgun being under the bed and the surrounding circumstances when L.W. made the statement, it is difficult to determine whether the statement was against L.W.'s penal interest. Defendant argues the statement was against L.W.'s penal interest because it exposed him to prosecution for possession of an illegal firearm. For this proposition, he cites later testimony that the shotgun was sawed off. But that testimony came in after the trial court had denied defendant's motion to introduce the statement, and defense counsel did not mention anything about the shotgun being sawed off when the trial court and parties discussed admission of the evidence that the shotgun was under the bed. We review the correctness of a trial court's rulings in light of what the trial court knew at the time of the ruling, not in light of later events. (*People v. Welch* (1999) 20 Cal.4th 701, 739.)
>
> However, even assuming the statement was against L.W.'s penal interest, the record is inadequate to determine whether it had sufficient indicia of reliability. As noted above, the trial court alluded to circumstances and other statements made by L.W. that may have rendered the statements about a struggle and an accident inadmissible because of reliability concerns. We do not know exactly what L.W.

said about the shotgun being under the bed, what else he said about the shotgun, when he said it, and what the circumstances were when he said it. The defense, as the proponent of the evidence, failed to carry its burden to resolve those concerns.

Defendant argues, "[L.W.'s] statement had sufficient indicia of trustworthiness because it exposed him to criminal prosecution and because it was not an attempt to shift blame or lessen his responsibility." We disagree. As noted, it was not clear at the time the defense attempted to introduce the evidence that the shotgun was illegally sawed off; therefore, it was not obviously self-inculpatory to the trial court. And even if this statement, in isolation, may not have been an attempt to shift blame or lessen responsibility, that factor must be considered in light of the remaining circumstances, which the record does not divulge.

Accordingly, we conclude the record does not support defendant's contention that the trial court abused its discretion by excluding L.W.'s statement that the shotgun was under the bed.

Defendant argues, alternatively, that his trial counsel provided ineffective assistance if counsel failed to adequately preserve for appeal the issue of the admissibility of L.W.'s statement about the shotgun being under the bed. This argument suffers from the same defects. We don't know exactly what L.W. said about a shotgun being under the bed, and we don't know the circumstances of the statement, including what else L.W. said. Therefore, we cannot conclude the evidence was admissible or that defendant's trial counsel provided ineffective assistance of counsel by failing to adequately present the issue to the trial court. Nor can we conclude defendant has established prejudice on this record. Given the vagary of the offer of proof, defendant cannot establish there was a reasonable probability he would have obtained a more favorable result had the testimony been admitted. (*Strickland v. Washington, supra*, 466 U.S. at pp. 693-694; *People v. Ledesma, supra*, 43 Cal.3d at pp. 217-218.)

### III

Again referring to the trial court's exclusion of L.W.'s statement about the shotgun being under the bed, defendant contends exclusion of the statement violated his due process right to present a defense.

As defendant acknowledges, exclusion of evidence under state evidentiary rules ordinarily does not violate a defendant's due process rights. (*People v. Jones* (1998) 17 Cal.4th 279, 305.) However, it is at least theoretically possible the principles of due process may require admission of evidence excludable under our state evidentiary rules. For example, "Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense. [Citations.]" (*People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 599.)

Defendant argues L.W.'s statement about the shotgun being under

14

> the bed could not be excluded without violating defendant's due process right to present a defense because "[L.W.'s] statement was reliable and highly relevant to a crucial issue at trial ...." As noted, however, the record on appeal does not support defendant's argument that L.W.'s statement was reliable. Therefore, because L.W.'s statement may have been unreliable under the circumstances, we cannot agree with defendant that exclusion of the hearsay statement violated his due process rights.

(ECF No. 9-13 at 8-11.)

The Constitution guarantees a criminal defendant the right to a meaningful opportunity to present a defense. Crane v. Kentucky, 476 U.S. 683, 690 (1986). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294 (1973); see also Webb v. Texas, 409 U.S. 95, 98 (1972) (per curiam). But the right to present a defense, including relevant testimony, is not absolute. See Rock v. Arkansas, 483 U.S. 44, 55-56 (1987); Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003); see also United States v. Mack, 362 F.3d 597, 602 (9th Cir. 2004) ("Naturally, that right can be limited and even relevant and reliable evidence can be excluded in proper circumstances.") State and federal lawmakers have "broad latitude" under the Constitution to establish rules excluding evidence in criminal trials, and these "rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998).

The Supreme Court has not established a principle for evaluating a state court's discretionary decision to exclude evidence. See, e.g., Moses v. Payne, 555 F.3d 742, 757-60 (9th Cir. 2009); Hale v. Holland, 655 F. App'x 533, 534 (9th Cir. 2016). "Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 509 (2013) (per curiam); Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). The Supreme Court has stated that "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is

15

outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006).

Here, petitioner argues that the trial court's exclusion of Williams's "statement" that the shotgun was under the bed deprived him of the right to present a defense. After reviewing the record, this Court concludes that the state court rejection of this claim was not contrary to, or an unreasonable application of clearly established federal law. As the state court correctly noted, the trial record merely contains a vague reference that Williams at some point said that the shotgun was under the bed. (ECF No. 9-13 at 9 ("We do not know exactly what L.W. said about the shotgun being under the bed, what else he said about the shotgun, when he said it, and what the circumstances were when he said it.")) Because Williams's statement was unreliable, the state court determined that the trial court did not err in excluding the statement as hearsay. Doing so was within the state court's wide latitude to exclude evidence, and petitioner has not shown that excluding Williams's statement as inadmissible hearsay was arbitrary or disproportionate to its purpose of excluding unreliable evidence. See Scheffer, 523 U.S. at 308. Habeas relief is not warranted to this claim either.[4]

C. Claim Three: Cumulative Error

Petitioner's third claim is that the cumulative effect of the errors alleged herein constitute a denial of due process. (ECF No. 1 at 24-26.) Respondent disagrees, contending that the state court's rejection was reasonable. (ECF No. 8 at 21.) Denying this claim, the state court concluded "[d]efendant contends that the cumulative prejudice of the trial court's errors requires reversal. Having found no error, we conclude the claim of cumulative prejudice lacks merit." (ECF No. 9-13 at 11.)

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually

---

[4] To the extent petitioner argues that the trial court erred in deciding that Williams's statement was not admissible as a statement against penal interest, that claim is not cognizable on habeas review. This Court is bound to the state court's holding that the evidence was inadmissible under state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

would not require reversal. Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)). "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." Parle, 505 F.3d at 928 (internal citations omitted); see also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir. 2010) (same).

This Court has addressed each of petitioner's claims and has concluded that no error of constitutional magnitude occurred. This Court also concludes that the alleged errors, even when considered together, did not render petitioner's defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict." Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

VI.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the

////

////

////

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 29, 2023

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

TAA/gree2414.157