UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dameshlo A. Green,<br><br>                Petitioner,<br><br>    v.<br><br>Daniel E. Cueva,<br><br>                Respondent. | No. 2:21-cv-02414-KJM-KJN<br><br>ORDER |

The State of California deprived Dameshlo Green of his Sixth Amendment right to the effective assistance of counsel at his criminal trial. His petition for a writ of habeas corpus is thus **granted**, as explained in this order.

**I.    BACKGROUND**

Tamisha Ridge died early in the morning in her bedroom from a shotgun wound. *See generally People v. Green*, No. C087436, 2020 WL 4496855, at *1 (Cal. Ct. App. Aug. 5, 2020) (unpublished). Two other people were in the room when the gun went off. The first was Dameshlo Green. He and Ridge had been in "a long-term, on-again, off-again relationship." *Id*. He had come to her home unannounced with hopes of rekindling their relationship once more. *Id*. The other person in the room was Lee Williams, the man Green found that morning in Ridge's bed. *Id*. After the gun went off, both Green and Williams left, Williams after wrapping some

1

1   clothes around the gun and sliding it into an adjoining bathroom. *Id.* Soon after he left the
2   bedroom, he told two people Green had shot Ridge. *Id.*

3   Although Green fled, he later turned himself in, and prosecutors charged him with Ridge's
4   murder. *See id.* at *2. At his trial, Green told the jury it had been an accident: Williams had
5   "rushed" him and they had struggled until Williams pulled the shotgun from under the bed. *Id.*
6   The two men had then fought over the gun until Williams struck Green in the face with its stock,
7   accidentally discharging it in the process, and the blast had killed Ridge. *Id.* Williams did not
8   testify, leaving the jury with only Green's account. *See id.* The jury could not reach a verdict.
9   *Id.* The trial court declared a mistrial. *Id.*

10  The state retried Green. Again Williams did not testify, but the prosecution presented
11  testimony by the two people who said Williams had told them Green shot Ridge. *See id.*
12  Although these statements were hearsay, the trial court admitted them under an exception for
13  "spontaneous" statements made under the stress of "excitement." *Id.* (citing Cal. Evid. Code
14  § 1240). Green did not testify at his second trial, but his attorney had his testimony from the first
15  trial read into the record: there was a fight, Williams pulled the gun from under the bed, and the
16  gun went off accidentally in the struggle. *Id.* Green's attorney attempted to corroborate that story
17  with another statement by Williams. *See id.* at *3. It is unclear what exactly Williams had said
18  and in what circumstances because Green's attorney did not make a formal proffer to the trial
19  court, at least not a proffer that was recorded on the record. But the judge, the prosecutor, and
20  Green's attorney all understood the basics: Williams had told the investigator the shotgun had
21  been under the bed, the two men had struggled, and the gun had discharged accidentally. *See id.*
22  Green's attorney asked the trial court to admit these statements under a hearsay exception for
23  statements "against the declarant's interest." *Id.* (quoting Cal. Evid. Code §1230). The trial court
24  did not permit Green to rely on that exception. The court concluded it would not have been
25  against Williams's interest to admit there had been a struggle, a gun under the bed, and a fatal but
26  accidental discharge. *See id.* at *3–4.

27  Green's attorney did not mention a different hearsay exception that was a much better fit
28  for the circumstances. Under section 1202 of the California Evidence Code, if hearsay statements

2

have been admitted, then other hearsay statements by the same person are also admissible to attack that person's credibility. *See id.* at *4. The California Supreme Court has held it is not necessary for the competing hearsay statements to flatly contradict one another. *See People v. Spencer*, 71 Cal. 2d 933, 942 (1969). If the second statement has a "tendency to contradict or disprove" the first, or even a tendency to contradict or disprove "any inference to be deduced" from the first statement, then the second statement is admissible. *Green*, 2020 WL 4496855, at *4 (emphasis omitted) (quoting *Spencer*, 71 Cal. 2d at 942). In Green's case, the trial court already had permitted the prosecution to introduce Williams's statement that Green had shot Ridge. An intentional shooting is one natural inference from that statement. Williams's later claim that the shot was an accident would tend to disprove any inference of intent, so those later statements would likely have been admissible under section 1202. But Green's attorney did not cite section 1202. Nor did he argue more generally that Williams's story was admissible to attack his credibility or to explain what he might have meant when he said Green had "shot her." Nor did Green's attorney ensure there would be a record of exactly what Williams had said and in what circumstances. As a result, the trial court did not decide whether the statements would be admissible under section 1202, and the record includes no confirmation of what exactly Williams said or whether his out-of-court statements were reliable.

This left the jury with, in effect, two competing narratives, related in testimony by the only people who had witnessed the shooting: first, Green's testimony from the first trial, read into the record, that the gun had gone off by accident in a struggle; and second, William's twice-repeated "excited utterance" that Green had "shot her." The jury found Green guilty of first-degree murder. *Id.* at *2. The trial court sentenced him to a total indeterminate prison term of 75 years to life. *Id.*

Green challenged his conviction in a direct appeal, represented by a different attorney. He argued his trial attorney's blunder amounted to unconstitutionally ineffective assistance in violation of the Sixth Amendment. *See id.* at *4. Green also challenged the trial court's decision to bar Williams's later statements under the evidentiary rule his trial lawyer did cite, and he argued the exclusion of those statements deprived him of his right to present a complete defense

3

under the Due Process Clause. *See id.* at *5–6. Finally, he contended that even if no single error warranted reversal, then the cumulative effect of the other errors deprived him of his constitutional rights. *See id.* at *6.

The Court of Appeal affirmed the conviction in an unpublished opinion. It did not decide whether Green's trial lawyer had assisted him effectively or even whether Green would have avoided a conviction if his attorney had managed to introduce what Williams had told the investigator. *See id.* at *4. The appellate court instead found it could not answer those questions because it did not know "exactly what [Williams] had said" to the investigator or "the circumstances of the statements." *Id.* Because Williams's statements might have been contradictory or unpersuasive or unreliable for some other reason, the Court of Appeal found it "impossible . . . to conclude with any level of certainty that the outcome of the proceeding, to a reasonable probability, would have been different." *Id.* The Court of Appeal rejected Green's due process claim for similar reasons: "because [Williams's] statement may have been unreliable under the circumstances," the Court of Appeal could not agree "that exclusion of the hearsay statement violated [Green's] due process rights." *Id.* at *6. The Court of Appeal likewise rejected Green's arguments about the trial court's evidentiary decisions and cumulative error. *See id.* at *5–6. The case then went up to the California Supreme Court, which denied review without comment. *See People v. Green*, No. S264374 (Cal. Oct. 16, 2020), ECF No. 9-15.

Green then filed a federal petition for a writ of habeas corpus in this court. *See generally* Pet., ECF No. 1. He raises the same three federal constitutional claims he pursued in his direct appeal: ineffective assistance of counsel, denial of due process, and cumulative error. *See generally id.* The state filed an answer and Green a traverse. *See generally* Answer, ECF No. 8; Traverse, ECF No. 10. The court referred the petition to the assigned Magistrate Judge under this district's local rules, and the Magistrate Judge has filed findings and recommendations to deny the petition. *See generally* F&Rs, ECF No. 11. Green has filed objections. *See generally* Objections, ECF No. 12. This court has thus considered the record and petition on a clean slate, beginning with Green's first claim for ineffective assistance of counsel. *See* 28 U.S.C. § 636(b)(1).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Except in a few limited circumstances, federal courts may not entertain a habeas petitioner's request to relitigate a claim that a state court has already "adjudicated on the merits." 28 U.S.C. § 2254(d). One exception is a state court's "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). In other words, when a state court has already adjudicated a claim on its merits, "a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle . . . but unreasonably applie[d] that principle to the facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). This is an exceptionally strict standard. The state court's decision must not only be wrong; it must be unreasonably wrong, "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Although that bar is high, it is not insurmountable. "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Id.* at 91. "Judges must be vigilant and independent in reviewing petitions" for a writ of habeas corpus. *Id.*

"In most situations, the task of determining what [is] clearly established will be straightforward." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). So it is in this case. For decades, a criminal defendant's Sixth Amendment right to effective assistance by an attorney has been clearly established in the decisions of the United States Supreme Court. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984) (collecting authority); *see also Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996) (confirming *Strickland* is clearly established federal law under § 2254(d)(1)). There is no question that a federal court must grant a petition for a writ of habeas corpus if the state court unreasonably rejected the petitioner's claim that he received ineffective assistance. *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 38–39 (2009) (per curiam); *Rompilla v. Beard*, 545 U.S. 374, 393 (2005).

The legal test for constitutionally ineffective assistance also is clear. The right to counsel "is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 685 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). An attorney's assistance was not "effective" if it

"fell below an objective standard of reasonableness." *Id.* at 687–88. For example, attorneys must bring all necessary "skill and knowledge" to bear. *Id.* at 688. But because even unreasonable errors might sometimes have no effect on the outcome, the Supreme Court has required petitioners also to prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Court of Appeal did not decide whether Green's trial attorney fell short of the objective test described in *Strickland*. It rejected his claim of ineffective assistance based solely on the second part of *Strickland* test. That decision was unreasonably wrong, and that is clear beyond any fairminded debate. The Court of Appeal erred in three respects.

First, the Court of Appeal unreasonably assumed Williams's statements to the investigator were contradictory or otherwise unreliable. Nothing in the record suggests there was any confusion about Williams's basic story. The record includes nothing to suggest that more specifics about that story would have undermined it. And yet the Court of Appeal faulted Green for not detailing "exactly what [Williams] said . . . and the circumstances of the statements." 2020 WL 4496855, at *4. In effect, the Court of Appeal assumed Williams was a reliable witness when it came to his claim that Green "shot her," but it assumed he was an unreliable witness in every other way. That is not properly applying the test as required here. Clearly established Supreme Court precedent does not instruct courts to hypothesize about how the omitted evidence might not have changed the outcome. Rather, if there is a reasonable probability the outcome would have been different, the omission is prejudicial. *Strickland*, 466 U.S. at 694. If the missing evidence undermines confidence in the outcome, the error is prejudicial. *Id.*

Even if Williams's statements to the investigator had been contradictory or unclear, the Court of Appeal erred in holding that uncertainty against Green. The trial court had allowed prosecutors to tell the jury Williams said "he shot her," meaning the victim, but Williams would not testify. Green could not cross examine him, could not ask him to clarify, and could not attack his credibility on the stand. If Williams's statements contradicted themselves, those contradictions would have undermined his credibility, and with it his claim that Green "shot her."

After all, even an admissible "excited utterance" could turn out to be a lie. *Cf., e.g.*, *Jones v. Police Officer Omarlo Phillips*, No. 15-51, 2017 WL 1292376, at *2 (E.D. Wis. Apr. 6, 2017). The Court of Appeal unreasonably rejected Green's claim based on potential contradictions in Williams's statements.

      Second, even accounting for uncertainties about Williams's statements to the investigator, the exclusion of those statements deprived Green of some of the most persuasive evidence he had to offer. The Court of Appeal unreasonably ignored how fundamental that deprivation was. Only two people could have testified first-hand about what happened that morning. One was Green. He said it was an accident, but he was on trial for murder, so he had an incentive to minimize his own culpability. The other person in the room was Williams, but the jury did not hear from him directly. It had only his second-hand statement that Green had "shot her." That statement suggested quite clearly—contrary to what Green said—that he had aimed the gun at Ridge and pulled the trigger. If Green had been permitted to introduce Williams's statements to the investigator, the jury's decision undoubtedly would have been very different. It would have heard the same basic story from the only two people in the room, including someone who was not facing murder charges: there was a fight; the gun was already under the bed when Green came in; and it had gone off by accident while the two men were fighting.

      Despite the crucial role of Williams's excluded statements, the Court of Appeal found it "impossible to conclude with any level of certainty that the outcome of the proceeding, to a reasonable probability, would have been different." 2020 WL 4496855, at *4. But again, "that is not the test." *Rompilla*, 545 U.S. at 393. In *Strickland*, the Supreme Court did not instruct lower courts to determine how certain they were about the likelihood of a different result. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. All that is necessary is for the attorney's error to "undermine confidence in the outcome." *Id.*; *see also Rompilla*, 545 U.S. at 393. When, as in this case, the attorney's error results in the exclusion of crucial evidence, the effect of that error may be "pervasive," and it might alter "the entire evidentiary picture." *Id.* at 696. The reviewing court "must consider the totality of the evidence." *Strickland*, 466 U.S. at

695. The Court of Appeal did not consider the effect of the missing evidence in context. It excused itself from that mandatory exercise, citing its own uncertainty about the evidence. This was not reasonable under the law.

Third, the Court of Appeal's opinion irrationally turned the *Strickland* test on itself. The Court of Appeal found it "impossible" to "conclude with any certainty" whether the exclusion of Williams's statements was prejudicial because the record was too sparse. *See* 2020 WL 4496855, at *4. But the record was sparse because Green's trial counsel did not develop it. As Green argues persuasively in his traverse, "the trial court did not ask for more details about the statements because counsel was not trying, as any reasonably competent attorney would have done, to introduce the evidence as a prior inconsistent statement." Traverse at 5. By requiring more clarity, the Court of Appeal both punished Green for his attorney's alleged error and underscored, indirectly, the breadth of that error. Not only did counsel fail to recognize a crucial evidentiary rule. He failed to explain how and why Williams's statements fit that rule. The state falls victim to the same circular reasoning in its answer, as did the Magistrate Judge. *See* Answer at 11; F&Rs at 12.

This is not to say that habeas corpus petitioners have no obligation to explain what a missing witness might have said. The state correctly points out that habeas petitioners must explain in their petitions what the missing witness's testimony would have been. *See* Answer at 11. They cannot rely on unsupported conclusions. *See Davis v. Woodford*, 384 F.3d 628, 650 (9th Cir. 2004) (citing *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990)). Their allegations must show, for example, why an attorney's decision not to call that witness was not actually strategic. In *Davis*, the petitioner's counsel had introduced fourteen mitigation witnesses, but investigators had interviewed fifteen more. *Id.* The attorneys' decision not to call the other fifteen was likely intentional: "their testimony would have been either negative or cumulative." *Id.* Affidavits and specific allegations might also be necessary if it is unclear whether a missing witness is a real person with something relevant to say. *See, e.g.*, *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000). But these rules are not rules about what a habeas petitioner must provide to a state court. They are federal rules that apply to federal petitions in federal courts. At the risk of

1    stating the obvious, the Court of Appeal was not evaluating a federal habeas petition.  And in any
2    event, there was no uncertainty about whether Williams was a real person, about the thrust of his
3    excluded statements, or about and why their admission would have aided Green's defense.  From
4    the trial court transcript, it is clear that all understood the statements and their relevance.  *See*
5    *Green*, 2020 WL 4496855, at *3–4 (quoting and summarizing transcript excerpts).

6        Nor is it appropriate to compare Green's petition to cases of allegedly faulty defense
7    investigations, as the Magistrate Judge proposes.  *See* F&Rs at 12 (citing *Bragg v. Galaza*,
8    242 F.3d 1082, 1088 (9th Cir. 2001) and *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th
9    Cir. 1988)).  Green does not fault his trial attorney for overlooking Williams's out-of-court
10   statements or for failing to recognize their value.  Green's trial attorney knew those statements
11   were valuable and attempted to admit them.  He simply failed to secure their admission, or at least
12   preserve the record properly by relying on all available grounds.

13       For these reasons, the Court of Appeal unreasonably applied the second part of the two-
14   part *Strickland* test for ineffective assistance of counsel, which is the clearly established federal
15   law prong under § 2254(d)(1).  The Court of Appeal did not make a final decision about the first
16   part of the *Strickland* test, i.e., whether the representation "fell below an objective standard of
17   reasonableness." 2023 WL 4496855, at *4.  Green is not entitled to a writ of habeas corpus
18   unless he also satisfies this first part of the *Strickland* test.  This court must therefore consider that
19   question de novo.  *See Porter*, 558 U.S. at 39; *Rompilla*, 545 U.S. at 390.

20       One of the essential skills an attorney brings to a criminal trial is a facility with the rules
21   of evidence and procedure.  An attorney must be familiar with these rules to provide the
22   necessary assistance.  *See, e.g.*, *Powell v. Alabama*, 287 U.S. 45, 69 (1932).  The Supreme Court
23   reiterated this basic rule a few years before Green's second trial, in *Hinton v. Alabama*, 571 U.S.
24   263 (2014) (per curiam).  The defendant in *Hinton* faced capital murder charges in two shooting
25   deaths.  *Id.* at 265.  The "core of the prosecution's case" was an expert opinion linking bullets
26   found at the crime scene to the defendant's gun.  *Id.* at 273.  The defendant's trial attorney knew
27   this.  *Id.*  He knew expert testimony would be necessary.  *See id.*  And he knew the expert he had
28   found "was not a good expert." *Id.*  But he did not look for a new expert.  *Id.*  He believed he had

no money to hire a new expert and no chance to find one who would testify for free. *See id.* He was wrong: state law would have permitted him to seek reimbursement for "any expenses reasonably incurred," and the trial court had expressly invited him to request further funds "if he felt more funding was necessary." *Id.* His failure to request more money was not a strategic choice. It was an "inexcusable mistake of law," and it deprived the defendant of his right to the effective assistance of counsel. *See id.* at 275.

In this case, the attorney who represented Green at his second trial made an equivalently unreasonable error. He knew Williams's statements to the investigator were crucial to Green's case. He attempted to admit them, but failed, relying on an unhelpful hearsay exception and overlooking a superior alternative. Nothing in the record suggests he was following any strategy. This error fell below the objective professional standard. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Id.* at 274.

In sum, Green's trial counsel overlooked an evidentiary rule, and as a result, the jury did not hear evidence at the heart of his case. This means Green was deprived of his Sixth Amendment right to the effective assistance of counsel. Considering the entirely of the *Strickland* test, the state court's decision to the contrary was an unreasonable application of clearly established federal law under § 2254(d)(1).

**III.   OTHER CLAIMS**

Green also argues the California courts' evidentiary rulings deprived him of his constitutional right to due process. "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (alterations omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). Trial courts may exclude evidence under well-established rules barring evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 320. The state courts excluded Williams's out-of-court statement as unreliable hearsay. 2020 WL 4496855, at *6. Green cites no clearly established Supreme Court authority barring state courts from excluding hearsay that

does not fit a traditional hearsay exception, and this court is aware of none.  And in any event, California law likely would have permitted Green to admit Williams's statements if his attorney had represented him effectively, as discussed in the previous section.  For these reasons, Green has not shown the state court's decision was an unreasonable application of clearly established federal law or contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1).

Green also argues the combined effects of the state courts' decisions deprived him of due process.  "[C]umulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Ineffective assistance by Green's trial lawyer rendered his trial unfair for the reasons above, but Green has not established that the state court's application of California's hearsay rules compounded that unfairness.

### IV.   CONCLUSION

The court **declines to adopt** the findings and recommendations at ECF No. 11.  The court **grants** a writ of habeas corpus on grounds of Green's deprivation of the right to effective assistance of counsel under the Sixth Amendment.  The court denies the petition with respect to the claims in grounds two and three.

The State shall release Green from custody within thirty days of the filed date of this order, unless, within that thirty-day period, the State files a written notice of its election to retry Green, and the State thereafter, within sixty days after the filing of that notice, actually commences Green's retrial.

IT IS SO ORDERED.

DATED: October 24, 2023.

CHIEF UNITED STATES DISTRICT JUDGE